IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Docket No.:** |
| Plaintiff, | 0207 1:24 CR00130- 002 |
| **ANTONIO VENTI,** | |
| Defendant. | (BMC) |

_____

**Prepared for The Hon. Brian M. Cogan United States District Judge:**

And served via ECF upon:

**Assistant United States Attorney**

**Adam Amir, Esq., 271A Cadman Plaza East**

**Brooklyn NY 11201**

**And**

**United States Probation Officer**

**Jeremy J Toner**

**Brooklyn NY**

### DEFENDANT'S SENTENCING MEMORANDUM

**I INTRODUCTION**

 Since his arrest on 3/27/24, Antonio Venti has remained free on bail and has used this freedom to remain clean and sober, conducting himself well in all aspects of his life.  He has taken a full

inventory of his relationships, his profession, his role as a member of a family and Page 2 in society. He has focused on his physical health, his drug free existence and on the enormity of the circumstances that bring us all here today.

A sentence will soon be imposed on Antonio Venti who, but for his addiction, would not have committed the crime. His dependence on heroin and nowadays, its more deadly synthetic cousin, fentanyl has been his unshakable problem most of his adult life. Last year that problem took a deadly turn. After the defendant "copped" or "scored" for himself and his old friend from "rehab" they each went to their respective homes to use. Venti used, nodded off, maybe ate or watched tv and woke up the next day like he had a thousand times before. She went home, used, nodded off and died. Her partner had no clue and had to

discover to his horror that she never woke up in the morning.

That old friend of the defendant was New York's dear and beloved Cecilia Gentili whose advocacy, inspiration, survival and sheer genius will forever be etched in the story of America, no matter the way she died, nor who writes the history. This aspect of the case reminds us of the human cost of fentanyl. Officer Toner in his report correctly reminds us that according to the DEA, a mere 2 milligrams of fentanyl can kill. Regardless of who the next fentanyl victim may be, the investigation and prosecution will occur just as it did here

until such time as fentanyl itself receives a death sentence.

According to the professionals charged with overseeing the defendant Venti during this pretrial period, Mr. Venti has complied with each and every requirement. According to those who love and depend on Mr. Venti for things like rent and family obligations, he has Page 3 been

exemplary during this pretrial period.  According to his doctors, he has taken his medications, altered his diet and appeared for appointments.  According to his employer, an electrician contractor, Venti has shown up on time and ready to work full days.  According to those professionals charged with his arrest and prosecution, Mr. Venti complied with the warranted search of his home and phone, did not obstruct or obfuscate, quickly took responsibility for his actions and as early as he could, Mr. Venti entered into plea

negotiations.  In July 2024, the first opportunity to do so, he pled guilty to Distribution and Possession with Intent to Distribute Heroin and Fentanyl  21 U.S.C. Sec.842)a)(1) and (b)(1)(c).  He was duly advised how critically his behavior would be monitored during the period between the arraignment and the plea and again between the plea and the

sentencing.

      Mr. Venti rose to the occasion, demonstrating that with regular guidance and monitoring, he can work, play, love, learn and contribute in ways other than just paying taxes, which he is also doing this coming April.  He has shown he can stay away from certain people and places and focus on what is meaningful and healthy.  We are not asking this Court  for anything extra.  We are asking this Court only for more of the same because it is working.   "It works if you work it" is an unattributed AA and NA mantra for which Mr. Venti is a living

example.  Why would we want to overturn this apple cart now?


      page 4

**THE DEFENDANT'S HISTORY**

The pretrial airing of Mr. Venti's life and set forth in the PIR show what we all know… that he has a long history of drug abuse. The report submitted by USPO Toner supports our position that Venti is not a drug dealer for profit, nor is he a killer, or a person indifferent to life.

Typically, users who identify with one another tend to pool resources in order to "score". That same Toner report shows that Mr. Venti and Ms. Gentili knew eachother as fellow addicts for 18 months at Samaritan Village. They were friends who got clean together and who relapsed together.

The report also shows that Mr Venti pled guilty to providing only one substance (fentanyl) but that the coroner found a variety of substances in the system of the deceased at the time of autopsy. The providers of those other substances remain presumably unknown and at large at this time.

The report also makes clear the serious health problems Mr Venti now must contend with after a lifetime of drug use.

**III THE BREADTH OF THE LAW**

Defendants convicted of distribution and possession under 21 U.S.C. Sec. 841(a)(1) and (b)(4)(c) can be fellow users and travelers along the path of addiction, as in Mr Venti's  Page 5 case. But the same law, being as broad as it is, may also include defendants who are

hardnosed drug dealers, stone cold, for profit and indifferent to life. We wish only to reiterate to this Court the wide range of people confronted with this law and ask that it apply a sentence to Mr Venti that takes into account the very real difference between the types of people ensnared by 21 U.S.C Sec 841 and to place Mr. Venti, because of his addiction, on the very low end of the scale of punishment available at the discretion of the Court. In terms of incarceration, the low end being 0 and the high end being 20 years of incarceration.

**IV THE GOALS OF THE LAW**

The mandatory pretrial programs in which Antonio is enrolled, engaged and involved and which appear to be having a real and positive impact are key to his survival as a free man. He must remain under supervision if his non-incarcerated status to be maintained. This will in turn reduce the likelihood of Mr Venti committing new crimes, thereby offering protection to the public from further crimes of the defendant. 18 U,S,C 3553(a)(2)(c). Because of that, a sentence of incarceration below the guideline range calculated by the probation office or otherwise varied down to zero would be "sufficient but not greater than necessary" to
achieve the Congressionally established goals of sentencing. 18 U.S.C. Sec 3553(a).

The goals of sentencing are set forth in the statute. Key factors a court must consider in sentencing are the nature and circumstances of the offense, the history and character of the defendant, the need for the sentence imposed to reflect the seriousness of the offense,  Page 6

deterrence to others, to protect the public from further crimes by the defendant, to provide the defendant with needed education, vocational and medical care and to avoid sentence disparities. 18 U.S.C.  Sec, 3553(a).   The goals are met as above and below show.

### V . CONFLICT BETWEEN STATUTE AND GUIDELINES

That Antonio embraced the EDNY pretrial services wholeheartedly and with humility is a testament to his wisdom because those people, places and things have now replaced the old people, places and things.  They will be there, along with his family during any period of probation or supervised release this Court might want to impose.

The defense agrees with the PIR that probation is not available to Mr. Venti under sentencing guidelines due to his placement in Zone D of the Sentencing Table resulting from the offense for which he now stands convicted. USSG  Sec. 5B1.1  However, probation is very much available to Venti under the statute where he remains eligible for not less than one nor more than five years of probation, so long as a fine, restitution  or community service
are made a condition thereof. 18 U.S.C. Sec 3561(c)(1) and Sec 3563(a)(2).

With regard to supervised release,  In Venti's scenario, there is less incongruousness between statute and guideline.  Both require the Court to impose a term of three years.  21 U.S.C. Sec 841(b)(1)(C) and  USSG Sec 5D1.2(a)(2).

page 7

### VI  WHAT IF THIS COURT INSISTS ON INCARCERATION?

If we are wrong in our arguments here and if the Court is inclined to impose a sentence of incarceration for which His Honor would be justified, we would only ask that it be for no more 6 months, accompanied by a recommendation that it be served at a minimum security facility which can be reasonably reached by car from Long Island.  There are no country club prisons, no "club feds" and nobody plays golf.  Those are myths and are not the

basis of the request.

We ask for minimum security because there exists little violence in such facilities.  Antonio Venti has never once had a weapon or engaged in violence of any kind. Nor has he ever threatened to do so.  He has never resisted arrest in the three or four times arrested.  His health is declining. He has good reason to make this request

We would ask for six months maximum if His Honor opts for incarceration because of his family, to whom he pays rent for the upstairs apartment in their 2 family home.  Six months is the longest they can sacrifice keeping the apartment empty for him before they begin defaulting on their lender/mortgagee.  After 6 months,  Venti loses his home, probably

along with his job as well.

Geographically, we would request a regional facility because the above-mentioned family is the only family Venti has and it would be a hardship for them to see Antonio if train/air tickets and hotel reservations are involved.

Page 8

To be clear however, any incarceration is demonstrably unnecessary in this case.  A further look at the law below supports the argument that in many scenarios such as this, good pretrial, followed by supervised release serves the intended purpose of the law.

**VII      LAW AND DISCRETION**

This Court would be free to follow the statute when it conflicts with the guidelines if it sees fit to do so.  As set forth above, the guidelines conflict with the statute regarding probation, though they mesh in this case when it comes to supervised release.

A federal judge  has much discretion in cases like this.  At sentencing, he, she or they may follow the guidelines, but does not have to do so.  Furthermore, appellate judges may only overturn a conviction sentence where there exists abuse of that discretion.  _Gall v. U.S._ Sup. Court 2007_, Kimbrough v U.S_. Sup. Ct. , _Rita v. U.S._ Sup. Ct. 2007.

Imposing a term of probation or supervised release is an option at the discretion of this Court and one that, if taken will act for the betterment of Mr. Venti, but more importantly, for the betterment of society by reducing public costs of confinement while arguably achieving greater results of keeping Venti on his new path of redemption and sobriety.  "Whatever you're doing, keep doing it" is what several friends and family have told Mr. Venti these past 11 months.  With all due respect, we urge this Court to agree and to allow Venti to keep doing what has been working so demonstrably well by ordering a term of supervised  Page 9 release or probation because such will efficiently achieve the aims the law was intended to address.

**VIII     WHAT WOULD CECILIA SAY?**

Soon it will be a year since we lost Cecilia. What might she say about Antonio from her present position? Her old friend, Antonio Venti, who she welcomed with open arms when he first arrived at Samaritan Village has penned a letter to this Court and it provides some insight. At first, his sorrow and remorse was debilitating. After 11 months of pretrial however, he is working full time, he has plans for the future that include more education and volunteerism in Cecilia's honor and he is committed to sobriety. What more can we ask? Soon after his arrest, Venti asked counsel to reach out to Cecilia's family. She had been dear to him, but it was too early for Venti to become involved in one of Cecilias many charitable pursuits such as COIN, where transgendered people are assisted with integrating into jobs and communities, but the wounds were too raw. Nonetheless, Venti's deep remorse was communicated early to the family and we pray their journey toward some form of closure has become softer.

## IX    CONCLUSION

We now respectfully request and based on the foregoing pray this Court, in its wise discretion, not incarcerate the defendant, but rather allow for probation and/or supervised release in its sentencing of Antonio Venti.

Page 10

Respectfully submitted on Wed. Jan. 29, 2025

/s/ Joseph A, Turco

JOSEPH ANTHONY TURCO

For Antonio Venti

Bar #2691509,

NY Second Dept, EDNY and SDNY 65

Oriental Blvd.

Brooklyn, NY 11235

347 854 7602

Jatlaw1963@gmail.com